UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EDNA DORAN, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 1:09-cv-327-RLY-TAB |
| | ) |
| METROPOLITAN LIFE INSURANCE | ) |
| COMPANY, | ) |
| Defendant. | ) |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On February 24, 2009, Edna Doran ("Plaintiff") filed suit in state court against Metropolitan Life Insurance Company ("Defendant"), alleging fraud and constructive fraud, arising from the sale of two life insurance policies. On March 17, 2009, Defendant removed this action to federal court pursuant to 28 U.S.C. § 1332. On March 12, 2010, Defendant filed the instant Motion for Summary Judgment. For the foregoing reasons, the court **GRANTS** Defendant's motion.

**I. Factual Background**

In April 2006, Plaintiff decided to explore the option of purchasing additional life insurance. (Deposition of Plaintiff ("Plaintiff Dep.") at 67-68). Plaintiff owned two annuities ("Genworth Annuities") that she acquired through her divorce settlement, and

1

wanted to roll them over into a single policy.[1] (*Id.* at 35-37, 95). One of the Genworth Annuities was valued at approximately $80,000, and the other was valued at approximately $12,000. (*Id.* at 45-46; Defendant Ex. C, Annuity Forms at MET00014-16). Plaintiff called Defendant to inquire about life insurance policies, and Defendant sent two insurance agents, Ammy Brimmer ("Brimmer") and Harry Riley ("Riley"), to Plaintiff's home for the purpose of discussing various insurance policies. (Plaintiff Dep. at 68, 70; Deposition of Brimmer ("Brimmer Dep.") at 21-22; Deposition of Riley ("Riley Dep.") at 24). Plaintiff was aware that Brimmer and Riley were insurance agents of Defendant, and understood that Brimmer and Riley were not tax experts, but merely insurance agents. (Plaintiff Dep. at 81, 111-13). Plaintiff provided all of the historical background information concerning the Genworth Annuities to Brimmer and Riley, and stated that she did not want to proceed with the roll over if it would result in any additional costs or tax repercussions. (*Id.* at 36-37; Brimmer Dep. at 23).

Upon review of the information provided by Plaintiff, Brimmer and Riley suggested that the Genworth Annuities could be rolled over into one of Defendant's variable annuities, in a transfer that is known as a "1035 exchange," which is generally not a taxable event. (*Id.* at 45; Brimmer Dep. at 22-24, Deposition of Judd Cromer ("Cromer Dep.") at 21-22). In order to qualify for a 1035 exchange, Plaintiff was required to be the annuitant. (Cromer Dep. at 28-29). Prior to initiating the rollover,

---

[1] The two annuities were issued by another insurer, Genworth f/k/a Life of Virginia. (Plaintiff Dep. at 35).

Brimmer and Riley learned that Plaintiff was not the annuitant of the larger annuity (her ex-husband was), and, consequently, she was ineligible for the 1035 exchange with respect to that annuity. (Brimmer Dep. at 48). Brimmer and Riley then suggested that Plaintiff surrender the larger annuity. (*Id.* at 48-49; Cromer Dep. at 28-31). Based on the information provided by Plaintiff, all parties believed that the surrender would not impose tax liability because they thought that the original contract amount was the cost basis of the larger Genworth Annuity. (*Id.* at 29-30; Plaintiff Dep. at 109-10).

During this process, Plaintiff contacted her accountant, Judd Cromer ("Cromer"), to inquire about any adverse tax ramifications concerning the transaction. (Plaintiff's Dep. at 92; Cromer Dep. at 24-25). For seven years, Cromer had prepared Plaintiff's annual income taxes. (Plaintiff's Dep at 92; Cromer Dep. at 13-14). In fact, Plaintiff describes Cromer as her "tax man." (Plaintiff Dep. at 92). On various occasions, Cromer assisted Plaintiff with financial transactions. For example, in 2006, Cromer assisted Plaintiff with tax issues regarding the sale of a parcel of commercial property. (*Id.* at 51-53; Cromer Dep. at 19).

On Plaintiff's behalf, Cromer spoke independently with Brimmer to ensure that Plaintiff would not incur tax liability. (Cromer Dep. at 26; Brimmer Dep. at 25-26). In addition, Cromer attended some of the meetings with Brimmer, Riley, and Plaintiff regarding the transaction. (Cromer Dep. at 32-33; Brimmer Dep. at 25-26). Along with Plaintiff, Brimmer, and Riley, Cromer also believed that surrendering the larger Genworth Annuity would not be a taxable event because he believed that the cost basis

3

was greater than the surrender value. (Cromer Dep. at 31-32).

On September 12, 2006, Plaintiff executed the transaction by engaging in a 1035 exchange with respect to the smaller annuity, and a surrender of the larger annuity. (Plaintiff's Ex. E, 1035 Authorizations). The application signed by Plaintiff stated, in relevant part: "You should consult your own tax advisor if you have any question about the tax treatment of your nonqualified annuity contracts. MetLife is not responsible for the tax consequences of this transaction." (*Id.*) In addition, Plaintiff signed an acknowledgment, which stated:

> I [] acknowledge that Met Life does not provide legal or tax advice and does not guarantee the intended tax treatment of the annuity or any riders thereto. I [] have been informed about the tax uncertainties stated above or elsewhere in this application, and it has also been recommended to me [] that I [] consult my [] own tax advisor or tax attorney prior to the purchase of the annuity or any riders thereto.

(Defendant Ex. C, Annuity Application). Plaintiff read and understood this language before she signed the annuity transfer application. (Plaintiff Dep. at 110-11).

In early 2007, Plaintiff received a Form 1099, which indicated that she owed approximately $30,000 in taxes from the surrender of the larger annuity. (*Id.* at 132-33, 135; Cromer Dep. at 47). In March 2007, Plaintiff called Cromer to inform him that she received notice of tax liability from the transaction, and asked him to call Defendant because she believed the Form 1099 was in error. (Brimmer Dep. at 133-34; Cromer Dep. at 47-49). Thereafter, Cromer called Brimmer, who was suprised to learn that Plaintiff received a Form 1099 because Brimmer believed that the surrender was a tax

4

free event. (Cromer Dep at 29-31; Brimmer Dep. at 28-29, 33). Brimmer believed that an error had been made, and asked Cromer to send her a copy of the Form 1099 so that she could investigate why Plaintiff received it. (Cromer Dep. at 31). Upon further research by Cromer, Brimmer, and Plaintiff, the parties learned that the larger annuity had been rolled over multiple times, and that Plaintiff's cost basis of the larger annuity was approximately $7,000, and the surrender value was approximately $88,000. (Defendant's Ex G, Full Surrender Confirmation). Because the cost basis was significantly less than the surrender value, the transaction resulted in a taxable event for Plaintiff. (Cromer Dep. at 30-31; Brimmer Dep. at 50).

## II.     Summary Judgment Standard

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A fact is material if it "might affect the outcome of the suit under the governing law . . . ," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id*. at 248. The court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

The burden is upon the movant to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the non-moving party may not rest upon the pleadings but "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaun-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990).

## III. Discussion

Plaintiff alleges that Defendant engaged in fraud and constructive fraud by not disclosing the tax consequences associated with the surrender of the larger annuity. In order to establish her fraud claim, Plaintiff must show: "(1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) which caused [Plaintiff] to rely upon the misrepresentation to the [Plaintiff's] detriment." *Siegel v. Williams*, 818 N.E.2d 510, 515 (Ind. Ct. App. 2004) (citing *Jackson v. Blanchard*, 601 N.E.2d 411, 418 (Ind. Ct. App. 1992)). Similarly, to establish constructive fraud, Plaintiff must show: "(1) a duty owed by [Defendant] to [Plaintiff] due to their relationship, (2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists, (3) reasonable reliance thereon by [Plaintiff], (4) injury to [Plaintiff] as a proximate result thereof, and (5) the gaining of an advantage by [Defendant] at the expense of [Plaintiff]." *Wheatcraft v. Wheatcraft*, 825 N.E.2d 23, 30 (Ind. Ct. App. 2005)

(citing *Block v. Lake Mortgage Co., Inc.*, 601 N.E.2d 449, 451 (Ind. Ct. App. 1992)).

Plaintiff claims that Brimmer and Riley made two material misrepresentations constituting actionable fraud: (1) statements concerning the cost basis for the annuity that was surrendered, and (2) the representation that there would be no tax liability on the surrender of the annuity.

### A. Cost Basis

Plaintiff alleges that Brimmer and Riley should have known the cost basis of the larger annuity before Plaintiff engaged in the surrender, rather than waiting to determine the cost basis until after Plaintiff received the notice of tax liability. Plaintiff asserts that inaction on the part of Defendant's agents constitutes reckless ignorance. To establish reckless ignorance, Plaintiff must show that Brimmer and Riley made a statement with reckless indifference to the statement's falsity. *Pauley v. Ford Elecs. and Refrigeration Corp.*, 941 F.Supp. 794, 802 (S.D. Ind. 1996) (citing *Wright v. Pennamped*, 657 N.E.2d 1223, 1230 (Ind. Ct. App. 1995)). In other words, Brimmer and Riley must have relayed false information about the larger annuity's cost basis to Plaintiff, without care as to whether the information was true or not. *See Capital Dodge, Inc. v. Haley*, 288 N.E.2d 766, 769 (Ind. Ct. App. 1972).

Plaintiff fails to present any evidence establishing that Brimmer and Riley were recklessly ignorant with regard to representations concerning the annuity's cost basis. All of the information concerning the Genworth Annuities was provided to Brimmer and Riley by Plaintiff, including information regarding the cost basis, contract price, and

7

surrender value. The transaction was ultimately taxable because the larger annuity had been rolled over previously. It is undisputed that Brimmer and Riley were not aware of that fact when the alleged misrepresentations regarding the cost basis were made. (Brimmer Dep. at 50; Plaintiff Response Brief at 5). Therefore, Brimmer and Riley were not reckless when they told Plaintiff the cost basis of the larger annuity because the statement was not made with reckless ignorance of falsity.

To the extent that Plaintiff argues Brimmer and Riley were recklessly ignorant because they had a duty to discover the cost basis of the annuities, Plaintiff's argument is misplaced. Plaintiff did not allege the tort of negligent misrepresentation, nor could she. Indiana does not recognize such a claim. *See Short v. Haywood Printing, Co., Inc.*, 667 N.E.2d 209, 213 (Ind. Ct. App. 1996) (citing *Wilson v. Palmer*, 452 N.E.2d 426, 428 (Ind. Ct. App. 1983)). Plaintiff is limited to a claim of fraud. The record is clear that Brimmer and Riley did not have the requisite scienter, and thus, her fraud claim fails as a matter of law.

### B. Tax Liability

Plaintiff also asserts that Brimmer and Riley made a material misrepresentation by stating that the surrender of the annuity would not result in tax liability. A fraud claim "may not be based upon representations of future conduct, broken promises, or representations of existing intent that are not executed." *Ruse v. Bleeke*, 914 N.E.2d 1, 10 (Ind. Ct. App. 2009) (citing *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 155 (Ind. Ct. App. 2005)). The same is true for a claim of constructive fraud.

8

*See Shriner v. Sheehan*, 773 N.E.2d 883, 849 (Ind. Ct. App. 2002) (holding that "[c]onstructive fraud requires the misrepresentation of past or existing fact; statements of opinion and representations as to the future are not actionable") (citing *Pugh's IGA, Inc. v. Super Food Servs., Inc.*, 531 N.E.2d 1194, 1198 (Ind. Ct. App. 1988)). Therefore, Plaintiff cannot predicate her fraud claim on Brimmer's and Riley's representations of Plaintiff's prospective tax liability, as those statements are representations of future consequences.

Furthermore, Defendant argues that Plaintiff cannot establish a material misrepresentation with regard to statements regarding tax liability because it is an expression of a legal opinion. "[M]isstatements of law cannot form the basis of fraud because everyone is presumed to know the law and therefore, the allegedly defrauded party cannot justifiably have relied on those misstatements." *Douglas*, 808 N.E. 2d at 703-4 (citing *Scott v. Bodor, Inc.*, 571 N.E.2d 313, 319 (Ind. Ct. App. 1991)). Plaintiff concedes that the statements regarding tax liability are legal opinions; however, Plaintiff argues that these statements constitute material misrepresentations because they fall under an exception to the general rule. In Indiana, "[t]here is an exception to the general rule for misstatements of law made by an attorney or someone professing knowledge in legal matters." *Id.* (citing *Scott*, 571 N.E.2d at 319).

While the exception is not limited to attorneys, it is only meant to apply in circumstances when "a party claims special knowledge or expertise in the law." *Id.* (citing *Scott*, 751 N.E.2d 319). Plaintiff stated that she did not believe that Brimmer and

9

Riley were experts in tax law, nor did Brimmer or Riley claim any specialized knowledge of tax law. (Plaintiff Dep. at 113). In addition, Plaintiff signed an acknowledgment that specifically stated that Defendant did not provide tax advice, nor did Defendant guarantee the expected tax treatment of any transactions. The acknowledgment also suggested that Plaintiff consult her own tax expert, which she seemingly did by involving Cromer, her self-proclaimed "tax man," in the transaction. Therefore, the exception to the general rule does not apply. Accordingly, Plaintiff's fraud claim fails as a matter of law because she cannot prove the Defendant made a material misrepresentation with regard to the tax liability of the transaction.

## IV. Conclusion

Based on the forgoing reasons, the court **GRANTS** Defendant's Motion for Summary Judgment (Docket # 36).

**SO ORDERED** this 5th day of November 2010.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies To:

Mark Jason Crandley
BARNES & THORNBURG LLP
mcrandley@btlaw.com

10

Bart A. Karwath
BARNES & THORNBURG LLP
bart.karwath@btlaw.com

Brendan W. Miller
BARNES & THORNBURG LLP
brendan.miller@btlaw.com

Steven Sams
STEVEN SAMS, P.C.
stevensamslaw@att.net